Filed 6/14/13  P. v. Madeira CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL STANLEY MADIERA,<br><br>    Defendant and Appellant. | D062366<br><br><br>(Super. Ct. No. SCD237869) |

APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

After punching Daniel Ruiz and breaking his jaw, Michael Stanley Madiera (also known as Michael Stanley Madeira) was found guilty of certain assault and battery offenses and sentenced to prison for seven years. Madiera contends the judgment must be reversed because the trial court gave the jury an inapplicable instruction that unconstitutionally undermined his defense. We reject this contention and affirm the judgment.

FACTUAL BACKGROUND

Ruiz met his friend Albert Dezi Ferdinand, Jr., at a bar late one night. After the bar closed, Ruiz felt "buzzed" and telephoned his mother to pick him up.

While Ruiz waited for his mother, Ferdinand walked along crowded streets to a nearby convenience store to buy some food. As he waited for his food, Ferdinand heard people outside the store shouting racial slurs and saw Madiera staring at him.

A few minutes later, Ruiz entered the convenience store to buy some food. Ruiz and Ferdinand exited the store together and proceeded toward Ruiz's mother's car. Madiera approached Ferdinand, directed an obscenity and a racial slur at him, and threatened to "kick [his] ass." Ferdinand asked Ruiz to hold his food; and as Ruiz reached forward to comply, Madiera punched him in the face. Ruiz fell to the ground bleeding and with a broken jaw.

Ruiz went to a hospital, where he had surgery on his jaw. His jaw was wired shut for approximately two months, and at the time of trial he still had numbness in his jaw.

Madiera testified at trial and related a very different version of the encounter with Ferdinand and Ruiz. According to Madiera, he was walking along the street with some

2

friends when he saw Ferdinand urinating. Some of the urine splashed on Madiera's girlfriend. Madiera said to Ferdinand: "You got no class whatsoever. . . . Man, put that thing away." Ferdinand responded with an obscenity and a threat to make Madiera perform fellatio on him.

After he finished urinating, Ferdinand proceeded to the convenience store. Madiera followed, opened the door of the store, leaned in, and asked the clerk to telephone the police to report that Ferdinand had urinated in public. Madiera also yelled at Ferdinand: "Man, don't ever do that again. That's not right. If a cop was here, you'd go to jail." Ferdinand "gave [Madiera] the finger and yelled and screamed." Madiera and his friends continued shouting at Ferdinand from outside the store.

When Ferdinand exited the convenience store, Madiera approached him and asked: "How could you do that? . . . What's the matter with you?" Ruiz then got out of his mother's car and told Madiera: "That's my homeboy. Leave [him] alone." When Madiera complained that Ferdinand had urinated on his friend, Ruiz uttered a gang name and threatened to "slit [Madiera] open like a pig." Ruiz also made a gesture that made Madiera believe Ruiz was going to cut him, but Madiera never saw a weapon. To defend himself, Madiera punched Ruiz in the face.

PROCEDURAL BACKGROUND

A jury found Madiera guilty of assault by means of force likely to produce great bodily injury (Pen. Code, former § 245, subd. (a)(1); subsequent undesignated section references are to this code) and battery with serious bodily injury (§ 243, subd. (d)). The jury found true allegations that the offenses qualified as serious felonies because in

3

committing them Madiera personally inflicted great bodily injury (§ 1192.7, subd. (c)(8)), and also found true a great bodily injury enhancement allegation attached to the assault charge (§ 12022.7, subd. (a)). After the jury returned its verdicts, Madiera waived his trial rights and admitted he had a prior conviction of battery with serious bodily injury that qualified as a "strike" under the "Three Strikes" law. (§§ 667, subds. (b)-(i), 1170.12.)

The court sentenced Madiera to an aggregate prison term of seven years. For the conviction of assault by means of force likely to produce great bodily injury, the court imposed the low term of two years (former § 245, subd. (a)(1)), doubled that term under the Three Strikes law based on Madiera's prior battery with serious bodily injury conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), and added a consecutive term of three years for the great bodily injury enhancement (§ 12022.7, subd. (a)). The court also imposed a prison term for the conviction of battery with great bodily injury, but stayed execution of that term pursuant to section 654.

## DISCUSSION

A. *The Trial Court Did Not Prejudicially Err by Instructing the Jury with CALCRIM No. 361*

Madiera's sole claim of error on appeal is that the trial court deprived him of his rights to a fair trial and due process of law (U.S. Const., 14th Amend., § 1) by instructing the jury with CALCRIM No. 361 because the instruction "unfairly called into question [his] credibility" and "was not supported by the evidence." The People counter that Madiera forfeited this claim of error because he did not object in the trial court to the

4

giving of the instruction, and in any event the court did not prejudicially err by giving it. For reasons we discuss below, we conclude Madiera forfeited his claim of error, and had he preserved the claim, the error complained of was harmless.

### 1. *Additional Background*

The trial court instructed the jury with CALCRIM No. 361 as follows:

"If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence.  Any such failure is not enough by itself to prove guilt.

"The People must still prove the defendant guilty beyond a reasonable doubt.

"If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

Madiera's trial counsel did not object when the instruction was given to the jury, or during the prior conference regarding jury instructions when the court stated that it would give the instruction unless counsel objected.

### 2. *Legal Analysis*

#### a. *Forfeiture*

As a threshold matter, we agree with the People that Madiera forfeited his claim that the trial court prejudicially erred by instructing the jury with CALCRIM No. 361. Failure to object to the giving of an instruction in the trial court forfeits the issue on appeal unless giving the instruction affected the defendant's substantial rights.  (§ 1259; *People v. Battle* (2011) 198 Cal.App.4th 50, 64-65.)  Madiera contends his substantial rights were affected because "[t]he instructional error was of constitutional dimension as

5

it in essence called into question [his] presumption of innocence and denied him his due process right to a fair trial." We reject this contention.

CALCRIM No. 361 and its substantively similar predecessor, CALJIC No. 2.62,[1] do not deprive a defendant of due process by denying him a presumption of innocence, raising a presumption of guilt, or reversing or lightening the People's burden to prove the defendant's guilt beyond a reasonable doubt. (*People v. Saddler* (1979) 24 Cal.3d 671, 679-680 (*Saddler*) [considering CALJIC No. 2.62]; *People v. Rodriguez* (2009) 170 Cal.App.4th 1062, 1066-1067 (*Rodriguez*) [considering CALCRIM No. 361 and following *Saddler*].) Rather, these instructions contain "language preserving the presumption of innocence and explaining the prosecution's burden of proof." (*Rodriguez*, at p. 1067; accord, *People v. Ballard* (1991) 1 Cal.App.4th 752, 756 (*Ballard*).) We therefore conclude that because the use of CALCRIM No. 361 did not deprive Madiera of his due process rights and he did not object to giving the instruction in the trial court, he forfeited his appellate claim of instructional error.

---

1    CALJIC No. 2.62 read: "In this case defendant has testified to certain matters. [¶] If you find that [a] [the] defendant failed to explain or deny any evidence against [him] [her] introduced by the prosecution which [he] [she] can reasonably be expected to deny or explain because of facts within [his] [her] knowledge, you may take that failure into consideration as tending to indicate the truth of this evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable. [¶] The failure of a defendant to deny or explain evidence against [him] [her] does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt. [¶] If a defendant does not have the knowledge that [he] [she] would need to deny or to explain evidence against [him,] [her,] it would be unreasonable to draw an inference unfavorable to [him] [her] because of [his] [her] failure to deny or explain this evidence."

6

b. *Merits*

Although Madiera forfeited his claim that the trial court erred by giving CALCRIM No. 361, we exercise our discretion to consider the merits of the claim in the interest of judicial economy and to prevent a later claim of ineffective assistance of counsel based on trial counsel's failure to object. (See, e.g., *People v. Riazati* (2011) 195 Cal.App.4th 514, 530; *People v. Norman* (2003) 109 Cal.App.4th 221, 230.)

We begin our analysis of the merits by discussing *Saddler*, *supra*, 24 Cal.3d 671, which considered the predecessor to CALCRIM No. 361 (i.e., CALJIC No. 2.62) and the circumstances in which the instruction should be given. (See *Rodriguez*, *supra*, 170 Cal.App.4th at pp. 1066, 1067 ["CALCRIM No. 361 is similar in content to CALJIC No. 2.62," and "the reasoning of the Supreme Court in *Saddler* . . . applies with equal force to CALCRIM No. 361"].) In *Saddler*, the Supreme Court explained that the trial court has a "duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' [Citation.] 'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference [citation].'" (*Id*. at p. 681.) To decide whether the trial court erred in giving the instruction, the appellate court must determine whether the defendant failed to explain or deny any fact or evidence that was within the scope of relevant cross-examination and about which he had knowledge. (*Id*. at p. 682.) Mere contradictions between the defendant's testimony and that of prosecution witnesses do not

7

constitute a failure to explain or deny. (*Ibid*.) Further, the reviewing court must not take "a hypertechnical view of the evidence" by focusing on details that were not specifically addressed in the defendant's testimony and that would not shed further light on the crime. (*Id.* at p. 683 & fn. 9.) Thus, CALCRIM No. 361 should be given only if during cross-examination the defendant was asked a question that called for an explanation or a denial of significant incriminating evidence, the defendant had the knowledge needed to answer the question or to explain why he did not know the answer, and the defendant did not explain or deny the evidence when answering the question. (*Saddler*, at pp. 682-683; see also *People v. Marks* (1988) 45 Cal.3d 1335, 1346.)

Applying these principles to this case, we conclude that CALCRIM No. 361 should not have been given. Madiera testified at length, fully explaining his actions and motivations during his encounter with Ruiz and Ferdinand. The People do not identify any significant incriminating evidence that Madiera failed to explain or deny during cross-examination. They instead contend the instruction was properly given because Madiera failed to explain "why he waited for Ferdinand outside the [convenience store] and attempted to provoke him into a fight," and "why he did not walk away from Ruiz in the six seconds between when Ruiz allegedly threatened him and when [he] punched Ruiz in the face." Madiera, however, was not asked about these details; and he did testify generally as to why he pursued Ferdinand (to confront him about urinating on his girlfriend) and punched Ruiz (to defend himself). We thus reject the People's contention as based on the type of "hypertechnical view of the evidence" that our Supreme Court criticized in *Saddler*, *supra*, 24 Cal.3d at page 683.

8

We further conclude, however, that the trial court's error was harmless. Because error in giving CALCRIM No. 361 does not implicate Madiera's federal constitutional rights, as we explained earlier, the error requires reversal only if it is reasonably probable Madiera would have obtained a more favorable result had the error not occurred. (*Saddler*, *supra*, 24 Cal.3d at p. 683; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1471 (*Lamer*).) Our Supreme Court repeatedly has held that giving an irrelevant or inapplicable instruction is generally a technical error that does not require reversal. (See, e.g., *People v. Cross* (2008) 45 Cal.4th 58, 67; *People v. Prettyman* (1996) 14 Cal.4th 248, 280; *People v. Rowland* (1992) 4 Cal.4th 238, 282.) Such error requires reversal only if the defendant shows it was reasonably likely the jury understood the instruction in a way that caused it to misapply the law or that was otherwise harmful to the defendant. (*Cross*, at p. 67-68; *People v. Carrington* (2009) 47 Cal.4th 145, 192.) Madiera has not made that showing here.

Madiera complains that CALCRIM No. 361 called into question the presumption of innocence in violation of his right to due process of law and unfairly singled out his testimony "for special adverse scrutiny." But the courts repeatedly have rejected these complaints, whether directed at CALCRIM No. 361 or its predecessor, CALJIC No. 2.62. (See, e.g., *Saddler*, *supra*, 24 Cal.3d at pp. 679-681; *People v. Mayberry* (1975) 15 Cal.3d 143, 161; *Rodriguez*, *supra*, 170 Cal.App.4th at p. 1067.) Courts also have routinely held the improper giving of CALCRIM No. 361 or its predecessor was harmless error because the language of the instruction is innocuous. (See, e.g., *Rodriguez*, at pp. 1066-1068; *Lamer*, *supra*, 110 Cal.App.4th at p. 1472 [collecting cases].) As one

9

court explained, the instruction "does not direct the jury to draw an adverse inference," and it "applies only if the jury finds that the defendant failed to explain or deny evidence." (*Ballard*, *supra*, 1 Cal.App.4th at p. 756.) The instruction also "contains other portions favorable to the defense," such as "cautioning that the failure to deny or explain evidence does not create a presumption of guilt, or by itself warrant an inference of guilt, nor relieve the prosecution of the burden of proving every essential element of the crime beyond a reasonable doubt." (*Ibid.*; accord, *Rodriguez*, at pp. 1066-1067.) Further, the jury was instructed with CALCRIM No. 200 to disregard any instruction that did not apply to the facts of the case. We presume the jury followed this instruction and ignored CALCRIM No. 361 if it found Madiera had not failed to explain or deny evidence against him. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852; *Saddler*, *supra*, 24 Cal.3d at p. 684; *Lamer*, at p. 1473.)

In sum, it is not reasonably probable that Madiera would have obtained a more favorable verdict had CALCRIM No. 361 not been given. We therefore reject his argument that the trial court prejudicially erred by giving that instruction. (See *Saddler*, *supra*, 24 Cal.3d at pp. 683-684; *Ballard*, *supra*, 1 Cal.App.4th at pp. 756-757.)

B.  *The Trial Court Was Not Required to Impose a Five-Year Enhancement for Madiera's Prior Conviction of Battery with Serious Bodily Injury*

After briefing was completed, we noticed the trial court had not imposed a five-year enhancement under section 667, subdivision (a)(1) for Madiera's prior conviction of battery with serious bodily injury. Recognizing that the mandatory enhancement was potentially applicable and that the court's failure to impose it might have resulted in a

10

legally unauthorized sentence, we requested and have considered supplemental letter briefs from the parties on the issue. (See Gov. Code, § 68081.) Madiera contends the trial court could not impose the five-year enhancement because the People did not plead or prove that specific enhancement. The People concede section 667, subdivision (a)(1) was not specifically identified in the information, but contend the court was required to impose the five-year enhancement because Madiera's prior conviction was alleged as a "strike," and "the very same factual basis that qualifies the prior conviction as a strike qualifies that prior conviction as a 'serious' offense." We conclude, for the reasons stated below, that the five-year enhancement cannot be imposed on Madiera.

As pertinent here, section 667, subdivision (a)(1) provides that "any person convicted of a serious felony *who previously has been convicted of a serious felony* in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." (Italics added.) "Where a person has been convicted of a serious felony in the current case, *and it has been alleged and proved the person suffered a prior serious felony conviction within the meaning of section 667, subdivision (a)(1)*, the trial court must impose a consecutive five-year term for each such prior conviction. The trial court has no discretion and the sentence is mandatory." (*People v. Purata* (1996) 42 Cal.App.4th 489, 498, italics added.) The failure to impose the mandatory five-year enhancement results in an unauthorized sentence, which we may correct on appeal. (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6; *People v. Turner* (1998) 67

11

Cal.App.4th 1258, 1269.) We may not impose the enhancement on Madiera, however, because the record does not clearly establish the conditions necessary for its imposition.

As noted, the five-year enhancement mandated by section 667, subdivision (a)(1) applies only when the current and prior convictions are serious felonies. Madiera's *current* convictions constitute serious felonies, because the statutory list of serious felonies includes "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice" (§ 1192.7, subd. (c)(8)), and the jury specifically found Madiera personally inflicted great bodily injury on Ruiz. The record does not establish, however, that Madiera's *prior* conviction constituted a serious felony. "Battery with serious bodily injury is not one of the crimes specified in section 1192.7, subdivision (c) as a 'serious felony.'" (*People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508.) That offense qualifies as a serious felony *only if* the People plead and prove, or the defendant admits, that in its commission the defendant personally inflicted great bodily injury on a person other than an accomplice, or personally used a firearm or other dangerous or deadly weapon. (§§ 969f, 1192.7, subd. (c)(8), (23); *Bueno*, at p. 1508; *People v. Taylor* (2004) 118 Cal.App.4th 11, 23; *People v. Moore* (1992) 10 Cal.App.4th 1868, 1871.) Here, however, those additional facts were not alleged in the information, the People did not prove them, and Madiera did not admit them. At the sentencing hearing, the court asked Madiera whether he admitted his prior conviction was a "felony" and a "strike," and he admitted it was both. But the court did not ask him whether it was a "serious felony" or involved the additional facts that would make it such (i.e., personal

12

infliction of great bodily injury on a nonaccomplice, or personal use of a firearm or other dangerous or deadly weapon), and he admitted neither.

In sum, the record does not establish that Madiera's prior conviction was a serious felony for purposes of section 667, subdivision (a)(1).  (See *People v. Miles* (2008) 43 Cal.4th 1074, 1083 ["if the serious felony nature of the prior conviction depends upon the particular conduct that gave rise to the conviction," but "the record of the conviction does not disclose how the offense was committed," then "the record is insufficient to establish that a serious felony conviction occurred"].)  Madiera is therefore not subject to the five-year enhancement prescribed by that statute.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

13